Michael J. Elia (ISBN 5044)
MOORE ELIA & KRAFT, LLP
Post Office Box 6756
Boise, Idaho 83707
Telephone: (208) 336-6900
Facsimile: (280) 336-7031
mje@melawfirm.net

Stephen J. Cullen, *Pro Hac Vice pending*
Kelly A. Powers, *Pro Hac Vice pending*
Miles & Stockbridge P.C.
1201 Pennsylvania Avenue, N.W., Suite 900
Washington, D.C. 20004
Telephone: (202) 465-8374
Facsimile: (410) 385-3709
scullen@milesstockbridge.com
kpowers@milesstockbridge.com

*Attorneys for Petitioner, Amber Bouillon*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| AMBER M. BOUILLON<br><br>    Petitioner,<br><br>v.<br><br>ANTHONY T. GARCIA<br><br>    Respondent. | Case No.:<br><br><br><br>VERIFIED PETITION FOR RETURN OF CHILD TO CANADA AND ISSUANCE OF SHOW CAUSE ORDER |

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001** *et seq.*

COMES NOW Petitioner, Amber M. Bouillon (the "Mother"), by and through undersigned counsel, and files this Verified Petition for Return of Child to Canada and Issuance of Show Cause Order (the "Petition") against the Respondent, Anthony T. Garcia (the "Father").

1

PETITIONER'S VERIFIED PETITION
FOR RETURN OF CHILD TO CANADA

## INTRODUCTION

1. This Petition is filed as a result of the wrongful retention of the parties' son, MRTG (born in 2007) (the "child"), in the United States from his habitual residence of Canada. The wrongful retention began on or about January 9, 2022.

2. The Mother is a Canadian citizen.

3. The Father is an American citizen and an enrolled member of the Flathead Tribe.

4. The child is a Canadian citizen. Upon information and belief, the child qualifies for Native American benefits as a descendant of the Father, but does not qualify for enrollment as a member of the Flathead Tribe.

5. This Petition is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[1] (hereinafter the "Hague Convention" or "Convention") and the International Child Abduction Remedies Act[2] (hereinafter "ICARA").

6. The Convention came into effect in the United States of America on July 1, 1988, and was ratified between the United States of America and Canada on July 1, 1988. The Convention and ICARA apply to Native American tribes.[3]

7. The objects of the Convention are as follows: (1) to secure the immediate return of children wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. Convention, art. 1.

---

[1] T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986).
[2] 22 U.S.C. 9001 *et seq*.
[3] *See, e.g.*, *Diabo v. Delisle*, 500 F. Supp. 2d 159, 163 (N.D.N.Y 2007).

PETITIONER'S VERIFIED PETITION
FOR RETURN OF CHILD TO CANADA

## JURISDICTION

8. This Court has jurisdiction under ICARA § 9003 because this case involves the retention of a child under the age of 16 in the United States from his habitual residence of Canada.

9. The child is currently located within the jurisdiction of this Court, with the Father in Benewah County, in the Coeur d'Alene Indian Reservation, at 1239 C Street, Plummer, Idaho 83851.

## FACTS

10. The child was born in 2007 in British Columbia, Canada.

11. The Mother and Father are both named as the child's parents on the child's birth certificate.

12. The Mother and Father are not married and do not live together.

13. The Mother and Father have two other children together, neither of whom are the subject of this Petition. Their oldest child, ARAG, is 18 years of age and lives with the Mother and her siblings in Canada. Their youngest child, SALG, is 12 years of age and lives with the Mother and her siblings in Canada.

14. The child has always lived with the Mother in Canada and visited the Father in the United States on vacations and school breaks and holidays.

15. The child has always attended school in Canada.

16. The child has always received medical, dental, and mental health care in Canada through Canada's universal publicly funded health care system.

17. The child has his mother, his sisters, his friends and his extended family in Canada.

18. The child is and always has been fully involved and immersed in day-to-day family life, cultural life, and education in Canada.

19. At all times the Mother has been fully involved in the child's family and cultural life and in providing for the child's education and other needs in Canada.

20. On December 30, 2021, the child travelled to Idaho to visit the Father over the winter break from school. The Father's partner, Elizabeth Haynes (the "Stepmother"), picked the child up in Canada and drove him to Idaho.

21. The Father was scheduled to return the child home to Canada on Sunday, January 9, 2022—the day before the child's Canadian school was to resume after the Canadian school winter break. The Stepmother was to drive the child home to Canada for the Father because, upon information and belief, the Father is not able to enter Canada.

22. The Father and Stepmother did not return the child home to Canada on January 9, 2022. Instead, the Stepmother claimed to the Mother that the Father had tested positive for COVID-19. The Stepmother first told the Mother that under the COVID-19 protocols between the United States and Canada at the time, the child was therefore required to quarantine in the United States for five days. A few days later, the Stepmother told the Mother the child was required to quarantine in the United States for ten days.

23. The Father and Stepmother did not return the child home to Canada at the end of the ten-day quarantine period they had claimed was required. The Stepmother told the Mother that she would return the child home to Canada for the Father on January 26, 2022 at 8:00 p.m. She claimed January 26, 2022 was the first date she could do so because it was the first date she would have childcare for her own young children.

24. On January 26, 2022, the Father sent the Mother a text message stating that he would not return the child home to Canada.

PETITIONER'S VERIFIED PETITION
FOR RETURN OF CHILD TO CANADA

25. Instead of returning the child home to Canada on January 26, 2022, the Father initiated a Petition for Custody in the Tribal Court of the Coeur d'Alene Tribe that very day (the "Idaho Tribal Court case").

26. In the Father's Petition for Custody in the Idaho Tribal Court case, he seeks legal and physical custody of the child.

27. The Father also filed a Motion for Emergency *Ex Parte* Hearing and Order in the Idaho Tribal Court case. He claimed that the Mother used recreational drugs and that she did not provide mental health treatment for the child.

28. The Idaho Tribal Court granted the Father's *ex parte* motion on the day it was filed.

29. The Mother received copies of the Idaho Tribal Court pleadings, papers, and orders <u>after</u> the *ex parte* order had been entered.

30. The Mother has not participated in the Idaho Tribal Court case.

31. On February 8, 2022 the Mother submitted her Hague Convention Return Application (the "Hague Application") to the Canadian Delegated Central Authority, which transmitted the Hague Application to the United States Department of State Office of Children's Issues (the "United States Central Authority").

32. On February 10, 2022, the United States Central Authority sent its Article 16 Letter to the Idaho Tribal Court, advising the Idaho Tribal Court of the Mother's application, and advising the Idaho Tribal Court of its obligation not to decide on the merits of any custody issues until resolution of the Hague Convention case.

33. On February 11, 2022, the United States Central Authority sent its Voluntary Return Letter to the Father in accordance with Article 10 of the Convention, advising the Father

of the Mother's application and inquiring as to the Father's position on voluntarily returning the child. The Father has not voluntarily returned the child.

34. With the assistance of the Central Authorities in Canada and the United States, the Mother has now been able to find and retain *pro bono* counsel to represent her in seeking the return of the child to Canada through this Petition in this Court.

## COUNT I – WRONGFUL RETENTION

35. The Mother restates and re-alleges the allegations contained in Paragraphs 1 through 34 as if fully set forth herein.

36. The Hague Convention applies to cases in which a child under the age of 16 years has been removed or retained from his or her habitual residence in breach of rights of custody of a petitioner, which the petitioner had been exercising at the time of the wrongful removal or wrongful retention of the child.

37. The child is under the age of 16.

38. The child's habitual residence is Canada and was Canada on the date the Father retained the child in the United States.

39. From the totality of the circumstances perspective as of the date of retention on January 9, 2022, Canada is the child's home.

40. Canada has always been the child's ordinary home and holds a degree of settled purpose from the child's perspective. The child has been fully involved and integrated in all aspects of daily and cultural life in Canada. The child has his mother, sisters, extended family and friends in Canada. The child receives medical, dental, and mental health care in Canada.

41. The Mother is and always has been involved in the child's family life, education, and social life from the time of the child's birth to the present. The Mother always has made educational, medical, and general welfare decisions for the child.

42. At the time the Father retained the child in the United States from Canada, the Mother had (and continues to have) rights of custody to the child under Canadian law by operation of law under British Columbia's Family Law Act (2011) (the "Family Law Act").

43. The Family Law Act Section 39(1) provides that both parents are guardians of their child. Section 40(1) further provides that each guardian of a child "may exercise all parental responsibilities with respect to the child in consultation with the child's other guardians."

44. Parental responsibilities are defined in Section 41 of the Family Law Act to include, *inter alia*: (A) making day-to-day decisions affecting the child; (B) day-to-day care, custody, and supervision of the child; (C) making decisions regarding where the child will reside; (D) making decisions regarding with whom the child will reside; (E) making decisions regarding the child's education, including the nature, extent and location of education; (F) making decisions regarding the child's cultural, linguistic, religious, and spiritual upbringing; and (G) applying for passports, licenses, permits, and benefits for the child.

45. The rights and parental responsibilities of a child's guardian under Canadian law necessarily involve the "care of the child." Guardianship and joint parental responsibilities are therefore rights of custody under Canadian law and Article 5*a* of the Hague Convention.

46. The Mother has guardianship and the joint parental responsibilities for the child as defined by the Family Law Act. She has these rights by operation of Canadian law, and she had these rights at the time the Father retained the child in the United States from Canada.

7

PETITIONER'S VERIFIED PETITION
FOR RETURN OF CHILD TO CANADA

47. At the time of the retention, there were no court orders entered by any court anywhere in the world changing the parties' respective *ex lege* rights of custody to the child under Canadian law. The Idaho Tribal Court's *ex parte* order was entered after the Father had already retained the child in Canada and is therefore irrelevant under article 3 of the treaty.

48. At the time of the Father's retention of the child in the United States, the Mother was actually exercising her rights of custody within the meaning of Articles 3 and 5*a* of the Convention, in that she is the mother of the child and she has actively participated in the child's life since the child's birth.

49. The Father's retention of the child in the United States from Canada is wrongful under the Hague Convention because the Father has retained the child from his habitual residence of Canada, in breach of the Mother's rights of custody to the child under Canadian law, which the Mother was exercising at the time of the retention.

50. Notice is given in this pleading that the Mother is relying upon foreign law. Fed.R.Civ.P. 44.1.

51. The Mother has never consented or acquiesced to the retention of the child in the United States from Canada.

52. The Mother has promptly taken all legal steps available to her to seek the return of the child to Canada.

53. The child is currently located within the jurisdiction of this Court with the Father, in Benewah County, in the Coeur d'Alene Indian Reservation, at 1239 C Street, Plummer, Idaho 83851.

## COUNT II – ARTICLE 18 RETURN

54. The Mother restates and re-alleges the allegations contained in Paragraphs 1 through 53 as if fully set forth herein.

55. The Mother invokes Article 18 of the Convention, which grants this Court plenary power to order the child's return at any time.

## PROVISIONAL AND EMERGENCY REMEDIES[4]

56. The Mother requests that the Court issue a Show Cause Order forthwith ordering the appearance of the Father and child before this Court on the first available date on the Court's calendar, and directing the Mother to serve the Show Cause Order by private process on the Father forthwith.

57. Unless this Court takes expedited action to issue the initial order requested by the Mother, irreparable harm will occur to the well-being of the child, because the child will continue to be deprived of his Mother and his home, siblings, school and community in Canada.

58. Pursuant to ICARA § 9004, in a proceeding for the return of a child, "[n]o court exercising jurisdiction … may … order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." ICARA § 9004. In this case, the law referred to is that of Idaho.

59. In Idaho the Uniform Child Custody Jurisdiction and Enforcement Act (hereinafter "UCCJEA") is the source for statutory law governing, *inter alia*, the resolution of both domestic and international child custody disputes and is codified as Idaho Code § 32-11-101 *et seq*.

---

[4] This Court "[i]n furtherance of the objectives of . . . the Convention . . . may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition." ICARA § 9004.

9

60. Idaho law addresses the appearance of the parties and the child in such cases in § 32-11-210 of the UCCJEA. That section authorizes this Court to order the appearance of the child and custodian or custodians *together*. *Id.*

61. This Court therefore has the authority to issue a show cause order, ordering the appearance of the Mother and children in that the provisions of 22 U.S.C. § 9004 can be met.

## UCCJEA DECLARATION

62. The details regarding the child that are required to be provided under the UCCJEA are as follows:

    A. The child is currently located with the Father within the jurisdiction of this Court with the Father, in Benewah County, in the Coeur d'Alene Indian Reservation, at 1239 C Street, Plummer, Idaho 83851.

    B. From the time of the child's birth until the Father retained the child in Idaho on or about January 9, 2022, the child has lived with the Mother in British Columbia, Canada. The address of the Mother and child in Canada is: 118 Redwood Drive, Apt. 104, Fruitvale, British Columbia, V0G-1L0, Canada.

    C. The Mother does not have information of any custody proceeding concerning the child pending in any other court of this or any other State, except as set forth in this Petition.

    D. The Mother does not know of any person or institution not a party to the proceedings that has physical custody of the child or claims to have guardianship and parental responsivities, or legal custody or physical custody of, or visitation or parenting time with the child.

## NOTICE OF HEARING

63. Pursuant to 22 U.S.C. 9003(c), the parties will be given notice of any hearing in accordance with Idaho's UCCJEA.

## ATTORNEYS' FEES, EXPENSES AND COSTS
## PURSUANT TO CONVENTION ARTICLE 26 AND ICARA § 9007

64. The Mother has incurred, and will continue to incur, reasonable and necessary expenses, and costs as a result of the wrongful retention of the child by the Father. The Mother's counsel are providing their time on a *pro bono* basis.

65. The Mother respectfully requests that this Court award her all of his reasonable and necessary expenses and costs incurred in accordance with ICARA § 9007, upon the filing of a separate motion for reasonable and necessary expenses and costs in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules.

## RELIEF REQUESTED

**WHEREFORE**, the Mother respectfully requests the following relief:

A. That this Verified Petition for Return of Child to Canada be granted;

B. That this Court issue a Show Cause Order in the form submitted herewith scheduling an initial show cause and scheduling hearing on the first available date on the Court's calendar;

C. That this Court's Show Cause Order be served upon the Father forthwith by private process;

D. That this Court issue an Order directing the Father to pay the Mother's reasonable and necessary expenses, including but not limited to suit money, expenses, and costs; and

E. That this Court grant any such further relief as justice and the Mother's cause may require.

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 22, 2022.

_____
Amber M. Bouillon
*Petitioner*

DATED this 22nd day of March 2022.

MOORE ELIA & KRAFT, LLP

*/s/ Michael J. Elia*
_____
Michael J. Elia
Attorneys for Petitioner

12

PETITIONER'S VERIFIED PETITION
FOR RETURN OF CHILD TO CANADA