UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMBER M. BOUILLON,<br><br>Petitioner,<br><br>ANTHONY T. GARCIA,<br><br>Respondent. | Case No. 2:22-cv-00123-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Petitioner Amber M. Bouillon's *Ex Parte* Motion to Show Cause, which the Court construes as a Motion for Temporary Restraining Order. Dkt. 1.[1] In issuing the following Order, the Court makes no determination as to the merits of the Petition. Such determination will instead be made following an evidentiary hearing to be held at a later date.

## II. BACKGROUND

On March 23, 2022, Bouillon filed a Verified Petition for return of child and for provisional relief pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (the "Hague Convention") and the

---

[1] Requests for provisional measures under 22 U.S.C. § 9004(a) are typically sought through a motion for injunctive relief pursuant to Federal Rule of Civil Procedure 65. *See, e.g.*, *Martínez v. Palmer*, 2022 WL 671212, at *4 (D. Idaho 2022); *Smith v. Smith*, 2017 WL 6040068, at *2 (D. Idaho 2017) (*superseded by Smith v. Smith*, 2018 WL 953338 (D. Idaho 2018)); *Pennacchia v. Hayes*, 2016 WL 9045964, at *2 (D. Idaho 2016); *Culculoglu v. Culculoglu*, 2013 WL 1413231, at *1 (D. Nev. 2013); *Wood v. Wood*, 2013 WL 1907492, at *3 (E.D. Wash. 2013); *Murphy v. Sloan*, 2013 WL 4725120, at *2 (C.D. Cal. 2013).

International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq*. Both countries at issue in this matter, Canada and the United States, are signatories to the Hague Convention. What's more, the Hague Convention and ICARA apply to Native American tribes. *Diabo v. Delisle*, 500 F. Supp. 2d 159, 163 (N.D.N.Y. 2007).

Bouillon and Respondent, Anthony T. Garcia, are parents of MRTG, a fourteen-year-old son.[2] Bouillon and Garcia are not married and do not live together. MRTG was born in 2007 in British Columbia, Canada, and is a citizen of Canada. According to the Petition, MRTG qualifies for Native American benefits as the descendant of Garcia, but does not qualify for enrollment as a member of the Flathead Tribe, of which Garcia is an enrolled member.

Bouillon alleges Garcia has wrongfully retained MRTG in the United States since January 9, 2022. On that date, Garcia was supposed to return MRTG to Canada after MRTG travelled to Idaho to visit Garcia over the winter holidays. Garcia did not return MRTG to Canada on January 9, 2022. Instead, Garcia, through his wife, Elizabeth Haynes, initially told Bouillon that MRTG could not be returned to Canada on January 9, 2022, because Haynes and Garcia had tested positive for COVID-19. A few days later, Haynes told Bouillon that MRTG was required to quarantine in the United States for ten days.

Haynes and Garcia did not return MRTG home to Canada at the end of the ten-day quarantine period. However, Haynes advised Bouillon that she would return MRTG to

---

[2] Bouillon and Garcia have two other children together, neither of whom are the subject of the instant Petition. The other two children both live with Bouillon in Canada.

Canada on January 26, 2022. On January 26, 2022, Garcia sent Bouillon a text message stating he would not return MRTG home to Canada. The same day, Garcia initiated a Petition for Custody in the Tribal Court of the Coeur d'Alene Tribe (the "Tribal Court Case"). In the Tribal Court Case, Garcia seeks legal and physical custody of MRTG. Garcia obtained an emergency *ex parte* order in the Tribal Court Case after alleging Bouillon uses recreational drugs and has not provided mental health treatment for MRTG.[3]

On February 8, 2022, Bouillon submitted her Hague Convention Return Application (the "Hague Application") to the Canadian Delegated Central Authority, which transmitted the Hague Application to the United States Department of State Office of Children's Issues (the "United States Central Authority"). On February 10, 2022, the United States Central Authority sent an Article 16 Letter to the Idaho Tribal Court, advising the Idaho Tribal Court of Bouillon's application, as well as of the Idaho Tribal Court's obligation not to decide the merits of any custody issues until resolution of Bouillon's Hague Application.

On February 11, 2022, the United States Central Authority sent a Voluntary Return Letter to Garcia in accordance with Article 10 of the Hague Convention, advising Garcia of Bouillon's application and inquiring as to Garcia's position on voluntarily returning MRTG to Canada. Garcia has not voluntarily returned MRTG to Canada.[4] On March 23,

---

[3] The Petition does not identify the specific ex parte relief the Idaho Tribal Court granted Garcia. Bouillon alleges that while she received copies of the Tribal Court Case pleadings, papers, and orders after the *ex parte* order had been entered, she has not participated in the Tribal Court Case.

[4] The Petition does not specify whether Garcia responded to the return letter.

2022, Petitioner initiated this action by filing the Verified Petition, which seeks ex parte emergency relief and, ultimately, the return of MRTG to Canada. Dkt. 1.

### III. DISCUSSION

To maintain the status quo, the Court is empowered to take appropriate measures "to prevent . . . prejudice to interested parties by taking or causing to be taken provisional measures." Hague Convention, art. 7(b). This Court "is permitted to implement all necessary procedures to prevent [MRTG's] further removal or concealment before the final disposition of the petition." 22 U.S.C. § 9004(a) (internal quotations omitted).

To maintain the status quo, Bouillon asks the Court to enjoin Garcia from removing MRTG from the District of Idaho pending a determination on the merits of the Petition. She also requests a Show Cause Order ordering the appearance of Garcia and MRTG at a show cause hearing before this Court on the first available date on the Court's calendar. Bouillon also requests that Garcia be required to surrender any passports, identity cards, visas, or other travel documents for MRTG to the Court during the pendency of these proceedings. Finally, Bouillon asks the Court to issue a warrant for Garcia's arrest if he fails to appear at the requested Show Cause Hearing. Such requests are analogous to a temporary restraining order. *Pennacchia*, 2016 WL 9045964, at *2.

Injunctions and restraining orders are governed by Federal Rule of Civil Procedure 65. Under Rule 65(a), a preliminary injunction can be issued only on notice to the adverse party. Fed. R. Civ. P. 65(a)(1). Issuance of a TRO, on the other hand, requires the moving party to show that "it clearly appears from specific facts shown by affidavit or by the

verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party . . . can be heard in opposition . . . ." Fed. R. Civ. P. 65(b). Federal Rule of Civil Procedure 65(b)(1)(B) also requires the movant's attorney to certify in writing "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

In this case, Bouillon requests emergency ex parte relief, but has not made a showing as to why an injunction should issue prior to service upon Garcia. The record indicates that Garcia is aware of Bouillon's Hague Convention Application. And, although a summons was issued in this case (Dkt. 8), no affidavit of service has been filed with the Court. Nor has Bouillon's counsel filed the requisite affidavit certifying "any efforts made to give notice and the reason why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

Given the lack of such an affidavit, and because it appears Garcia has maintained contact with Bouillon and has not indicated an intention to flee or conceal MRTG, the Court finds Bouillon has not shown specific facts evidencing an immediate and irreparable injury will result before Garcia can be heard in this case. In so concluding, the Court does not minimize Bouillon's obvious interest in seeing and communicating with MRTG, or the resulting harm she may suffer if denied contact with MRTG. At this stage, however, these interests can be addressed through an expedited motion for preliminary injunction, which will allow Garcia the opportunity to respond to Bouillon's requests.

Accordingly, the Court will deny the Motion for Order to Show Cause without prejudice to renewal if Bouillon's attorney either: (1) certifies in an affidavit why a motion

for temporary restraining order should issue prior to service; or (2) renews Bouillon's request for injunctive relief after service of the motion upon Garcia.

## IV. ORDER

Now, therefore, **IT IS HEREBY ORDERED**:

1. Bouillon's Motion for Order to Show Cause (Dkt. 1) is **DENIED without prejudice**;

2. Bouillon shall, no later than March 28, 2022, *either* (a) serve the Petition and this Order upon Garcia, and file a certificate of service of the same; *or* (b) file an *ex parte* motion for temporary restraining order, with an accompanying affidavit from her attorney certifying any efforts made to give notice and the reasons why notice should not be required[5];

3. The Petition (Dkt. 1) remains pending.

DATED: March 25, 2022

David C. Nye
Chief U.S. District Court Judge

---

[5] The undersigned is typically in Coeur d' Alene one week a month. To avoid unnecessary delay, the Court is not inclined to hold a show cause hearing. Rather, the Court will either grant or deny the provisional relief Bouillon ultimately requests, and, at that time, will also enter an expedited briefing schedule and set an evidentiary hearing on the merits of the Petition. This is the Court's standard practice in Hague Convention cases and will expedite a determination on the merits without the necessity of two court dates in Coeur d'Alene.